PER CURIAM.
The employer and carrier challenge the deputy commissioner's order awarding catastrophic loss benefits, temporary partial disability benefits, and permanent impairment benefits due to amputation, pursuant to section 440.15, Florida Statutes (1983). We reverse.
The claimant amputated the tips of her right middle and ring fingers while operating a metal punch machine. A plastic surgeon applied skin grafts to the ends of her fingers; neuromas developed which made the tips of her fingers especially sensitive. Her orthopedic surgeon suggested surgery to alleviate the sensitivity problem, but she declined.
Thereafter, the carrier stopped paying temporary disability benefits and sent the claimant, through her attorney, job search forms and a standard wage loss letter advising her that her doctor had reported she could return to work, and that she would be obligated to commence a work search in order to be entitled to wage loss benefits.
A few days later, the carrier sent a second letter to the claimant’s attorney, confirming that the employer had work available for the claimant within her limitations, providing the name and telephone number of the contact person with the employer, and enclosing temporary partial wage loss forms and job search forms for the claimant’s attorney to forward to her.
One month later, the employer sent the claimant a letter[1] advising her that it had a light duty job within her physical limitations and that her attorney had been so informed, but had not responded. The claimant admitted receiving these letters, and also admitted that “they had called” her even before she received the letters.
Between the second and third letters, the claimant’s plastic surgeon found that she had sustained a 5% permanent partial impairment of the body as a whole as a result of the amputation of part of her middle finger, and a 3% permanent partial impairment of the body as a whole as a result of the amputation of part of her ring finger, pursuant to the AMA Guides.[2] He also noted some ankylosis and loss of range of motion of the claimant’s small finger, and assigned a total rating of 10% permanent partial impairment of the body as a whole.
*760 Eleven days after the claimant received the third letter, her orthopedic surgeon found that she had reached maximum medical improvement (MMI), assigned her a 10% permanent partial impairment of the body as a whole, and discharged her to light duty work with a ten pound limitation to her right hand.
A week later, the claimant returned to work for the employer in a full-time position as a machine operator at the same wages as before the accident, but in a different department. She had some trouble with the machine to which she was assigned, and was switched to another machine with which she had no problems. She testified at the hearing that she is able to drive and to perform job duties and household chores, so long as she does these activities slowly so as not to hit the tips of her fingers.
In his final order, the deputy commissioner awarded temporary partial disability benefits pursuant to section 440.-15(4), Florida Statutes (1983), from the date benefits were stopped until the date of MMI, based in part on the orthopedist’s report of restrictions on the claimant’s use of her hand. The deputy commissioner noted the evidence that there was a job available for the claimant and that she had been sent wage loss forms and had not filed these forms, but found that there was a “very confused situation” during this period and excused the claimant from performing a work search and from filing wage loss forms.[3]
This award is not supported by competent substantial evidence. The record indicates that the claimant was adequately notified of her doctor’s opinion that she was able to perform light duty work and that the employer had such a job available for her, and does not support the deputy commissioner’s finding that the situation was so “confused” that the claimant was not aware of her obligation to seek employment, and his excuse of her failure to attempt to return to work within her restrictions.
The deputy commissioner also found that, “as the result of her industrial accident and the injuries to her right hand,” the claimant had suffered an impairment of 10% of the body as a whole, based upon the reports of her doctors. He found that the evidence was not clear as to whether all or part of this rating was specifically for the amputations or for other injuries suffered in the accident, but that the claimant was entitled to the “benefit of the doubt” and to payment, pursuant to section 440.15(3), of benefits for a 10% permanent impairment of her body due to the amputations, instead of the 8% already paid.
This award is also not supported by competent substantial evidence in the record. The deputy commissioner specifically relied upon the doctors’ assessments of the claimant’s impairment. Although the orthopedic surgeon did not specify the basis for his impairment rating, the plastic surgeon specifically assigned a total of 8% impairment to the amputations of the ends of two fingers, and indicated that the additional 2% impairment was due to ankylosis and limitation in the range of motion of the baby finger.
Where the Workers’ Compensation Act is susceptible of disparate interpretations, the courts will adopt a construction which is most favorable to the claimant, Kerce v. Coca-Cola Company-Foods Division, 389 So.2d 1177 (Fla.1980). However, this rule does not require the deputy commissioner to give the claimant the “benefit of the doubt” in weighing conflicting evidence or, as in this case, to ignore evidence which indicates she is not entitled to additional benefits.
Finally, the deputy commissioner awarded the claimant catastrophic loss benefits for the six months immediately following the accident, pursuant to section 440.-15(2), based upon the total loss of use of her right hand because of amputation of *761 parts of two fingers, relying upon Atlantic Plastering Company, Inc. and Risk Management Services v. O’Hara, 454 So.2d 743 (Fla. 1st DCA 1984). He stated that the claimant “not only had amputation to two of the fingers on the hand but also had a Neuroma formation affecting the nerves of the tips of the fingers” and therefore that the claimant, “being given the benefit of the doubt,” was entitled to catastrophic loss benefits.
The deputy commissioner erred in awarding catastrophic benefits to this claimant in the absence of evidence of total loss of use of her hand caused by organic nervous system damage during the time that use was affected by neuromas following surgery.
The deputy commissioner’s order is REVERSED.
MILLS and WENTWORTH, JJ., concur.
BARFIELD, J., concurs with written opinion.

. This letter was in Spanish; the two previous letters to the claimant’s attorney were in English. The claimant is originally from Ecuador and understands some English.

. Each finger was amputated at the distal inter-phalangeal joint (the first joint from the tip of the finger).

. The deputy commissioner denied the claim for wage loss benefits from the date of MMI to the date the claimant actually returned to work, finding that she had been discharged to light duty work and that she had no excuse for not reporting to work during that period.